ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| EUGENIO A. LÓPEZ LORA<br><br>Recurrente<br><br>v.<br><br>MEDINA, LUNA & ASOCIADOS, LLC<br><br>Recurrido | TA2026RA00064 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: CAG-2024-0006420<br><br>Sobre: Bienes Raíces (Ley Núm. 10 de 26 de abril de 1994, según enmendada) |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de abril de 2026.

Comparece por derecho propio el Sr. Eugenio López Lora mediante un recurso de revisión judicial. Solicita la revocación de la *Resolución* dictada el 30 de diciembre de 2025, notificada al día siguiente, por el Departamento de Asuntos del Consumidor (DACO). En la referida decisión administrativa, la agencia desestimó la *Querella* instada y ordenó el cierre y archivo de la causa por falta de jurisdicción.

Por los fundamentos que expondremos a continuación, confirmamos la determinación administrativa.

**I.**

La presente causa se inició el 18 de octubre de 2024, ocasión en que el señor López Lora incoó una *Querella* en contra de Medina, Luna & Asociados LLC (MLA).[1] Alegó que, por conducto del Sr. Edwin Edgardo Medina Bonilla, en representación de MLA, las partes suscribieron un *Contrato de Opción de Compraventa* (*Contrato*),[2] por una prima de $5,000.00[3] y un término de 60 días, sobre una propiedad sita en Humacao, cuyo precio quedó pactado en $192,000.00.

---

[1] Anejo F del recurso.
[2] Anejo A del recurso.
[3] Anejo B del recurso.

El recurrente alegó que invirtió más de cuatro mil dólares en reparaciones necesarias,[4] para la aprobación del financiamiento. Acotó que, a pesar de que el señor Medina Bonilla le dijo que el pozo séptico cumplía con el ordenamiento legal, el Departamento de Salud no lo certificó. Entonces, afirmó que la compañía financiera denegó el préstamo.[5]

Así las cosas, el señor López Lora solicitó infructuosamente el reembolso de la prima prestada,[6] al amparo de la cláusula contractual Cuatro (B) que dispone que "[s]i la parte compradora no pudiese conseguir el financiamiento hipotecario para la compra de la propiedad, sin haber contribuido bajo ninguna circunstancia en la no obtención del préstamo, la parte vendedora acuerda devolverle a la parte compradora la suma depositada como opción de compraventa". Ante la negativa del MLA a restituir el dinero, el señor López Lora acudió al DACO.

Guiados por el expediente, durante el procedimiento administrativo, el señor Medina Bonilla compareció en nombre de MLA con la debida resolución corporativa. Aun cuando los autos adolecen de cualquier documentación de la parte recurrida, del expediente surge que el recurrido arguyó que no era un corredor de bienes raíces.

Luego de ponderar las alegaciones, el DACO dictó la *Resolución* impugnada[7] y consignó las siguientes determinaciones de hechos, que reproducimos parcialmente:

1. El Querellado no es un corredor de bienes raíces, es una corporación de responsabilidad limitada que se encuentra incorporada en el Departamento de Estado, bajo las leyes de Puerto Rico con número de registro #478308.

2. El Querellante estaba interesado en comprar una residencia propiedad de la parte Querellada por lo que el 7 de julio de 2024 suscribió un contrato de opción de compra de una residencia localizada en Buena Vista en Humacao, Puerto Rico.

3. La propiedad era una residencia cuyo costo ascendía a ciento noventa y dos mil dólares ($192,000).

4.La opción de compraventa fue garantizada con un pago de cinco mil dólares ($5,000).

---

[4] Anejo D del recurso.
[5] Anejo C del recurso.
[6] Anejo E del recurso.
[7] Anejo G del recurso.

5. [...]

6. [...]

7. El Querellante hizo varias reparaciones a la propiedad, según requerido por el Banco. El costo de dichas reparaciones ascendió a $4,852.10 dólares.

8. La entidad financiera con la que la Querellante pretendía hacer su préstamo hipotecario era "Fembi Mortgage" (en lo sucesivo "Banco").

9. El 11 de octubre de 2024, se emitió un reporte del Banco en que se determina que el Banco no aprobó el financiamiento. [...]

10. El Querellante se comunicó con el Querellado para notificarle de la denegatoria del préstamo, y de paso le indicó ya no quería seguir con el contrato y le solicita le devuelva los $5,000 pagados en la opción.

11. El Querellado le indicó al Querellante que, conforme al contrato firmado entre las partes, no procedía la devolución del dinero de la opción, sin embargo, se ofreció a hacerle un nuevo pozo séptico, pero el Querellante declinó dicha oferta.

12. El 21 de octubre de 2024, el querellante radica la [Q]uerella de epígrafe solicitando la devolución del dinero pagado por la opción de compraventa y el dinero invertido en reparaciones en la residencia.

Al tenor de lo anterior, el DACO se declaró sin jurisdicción, ya que la controversia no versaba entre un comerciante y un consumidor; sino entre una persona privada que no realizó una actividad comercial como corredor de bienes raíces. Añadió que no se presentó prueba de que el MLA fuera un comerciante o corredor de bienes raíces. En consecuencia, desestimó la *Querella* y ordenó su cierre y archivo.

El 8 de enero de 2026, inconforme con el resultado, el recurrente presentó ante el DACO una *Moción de Reconsideración*, en la que aseguró que MLA sí era una entidad dedicada de forma habitual a las transacciones de bienes inmuebles, actuando como comerciante en el mercado inmobiliario.[8] Para ello, proveyó impresos de varios anuncios del recurrido en medios públicos.[9] En respuesta, el 22 de enero de 2026, notificada el siguiente día, el DACO emitió una *Resolución en Reconsideración*.[10] En ésta, declaró No Ha Lugar la petición de variar su dictamen.

---

[8] Anejo H del recurso.
[9] Anejo J del recurso.
[10] Anejo I del recurso.

Todavía insatisfecho, el señor López Lora acudió oportunamente ante nos y esgrimió los siguientes señalamientos de error:

Primer Error: Erró DACO al resolver la controversia basándose en la alegación del querellado de que no es corredor de bienes raíces, cuando dicha determinación es irrelevante para adjudicar el derecho contractual al reembolso del depósito de opción de compra.

Segundo Error: Erró el DACO al omitir realizar determinaciones esenciales sobre si la denegación del financiamiento fue imputable a; comprador, conforme exige expresamente la Sección Cuatro, parte B del contrato.

Tercer Error: La resolución recurrida carece de evidencia sustancia al ignorar prueba no controvertida de que la denegación del préstamo obedeció a la condición objetiva de la propiedad bajo los requisitos del financiamiento VA, así como a los esfuerzos diligentes del comprador, incluyendo la inversión de $4,852.10 en mejoras autorizadas.

Salvaguardados ciertos trámites interlocutorios, innecesarios de pormenorizar, emitimos una *Resolución* el 23 de febrero de 2026, mediante la cual concedimos un término de 30 días a MLA para que presentara su alegato. Transcurrido el plazo, el 10 de abril de 2026, MLA presentó una *Moción en solicitud de aceptación de escrito fuera de término y Alegato en oposición a revisión judicial.* Con el beneficio de ambas posturas, procedemos a resolver.

## II.

## A.

Revisamos la *Resolución* del DACO en el caso del epígrafe, al palio del Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.* (Ley Núm. 201-2003), el cual dispone en parte que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho […] las decisiones finales de los organismos y agencias administrativas". 4 LPRA sec. 24u; además, Art. 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y. En consonancia, la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.*, establece un procedimiento uniforme de revisión judicial a la acción tomada por una agencia de

Gobierno al adjudicar un caso. En particular, la Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, estatuye que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias basadas en evidencia sustancial; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho.

Mediante la revisión judicial, esta curia debe examinar que la decisión administrativa encuentre apoyo en la evidencia sustancial que obre en la totalidad del expediente administrativo. El concepto *evidencia sustancial* se ha definido como aquella "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953), refrendados en *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019). Por ello, el *expediente administrativo*, por su parte, constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la revisión judicial ulterior. Sec. 3.18 de la LPAUG, 3 LPRA sec. 9658; *Graciani Rodríguez v. Garaje Isla Verde*, *supra*, pág. 128. Por igual, examinamos que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar. Finalmente, auscultamos que el organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya lesionado derechos constitucionales fundamentales. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016).

En suma, al momento de justipreciar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales tenemos la obligación de ejercer un juicio independiente de las disposiciones legales para determinar si una agencia ha actuado o no dentro de los límites de su autoridad estatutaria, incluso

en los casos de ambigüedad legislativa. Véase, *Loper Bright Enterprises v. Raimondo,* 144 S.Ct. 2244 (2024); 603 US __ (2024);[11] *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR __ (2025).[12] Claro está, según ha pautado el Tribunal Supremo federal y ha refrendado nuestro alto foro, las interpretaciones y los dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— pueden constituir un cuerpo de experiencia y un juicio informado ("body of experience and informed judgment") al que los foros revisores y los litigantes pudiéramos recurrir en cuestiones jurídicas. *Id.,* pág. 2259; *Vázquez v. Consejo de Titulares, supra.*

**B.**

Como parte de este ejercicio evaluador y vinculado al caso de autos, debemos considerar lo estatuido en la Ley Núm. 5 de 23 de abril de 1973, según enmendada, *Ley Orgánica del Departamento de Asuntos del Consumidor,* 3 LPRA sec. 341 *et seq.,* la cual establece en su Artículo 7 lo siguiente:

> El Secretario tendrá poderes y facultades para, en protección de los consumidores, fiscalizar el cumplimiento de las leyes sobre protección al consumidor que estén bajo la jurisdicción de otras agencias y organismos del Estado Libre Asociado de Puerto Rico y referir a los mismos las querellas y notificar las infracciones para que éstos tomen la acción que proceda. 3 LPRA sec. 341f.

En consonancia, el Reglamento Núm. 8034 de 14 de junio de 2011, *Reglamento de procedimientos adjudicativos,* estatuye las normas reglamentarias atinentes a la jurisdicción del DACO, que a continuación reproducimos e impartimos énfasis:

> **Regla 3** *Aplicabilidad*
>
> Estas reglas aplicarán a las investigaciones y los procedimientos administrativos sobre **querellas iniciadas por consumidores**, o por el Departamento. Además, aplicará a los procesos adjudicativos impuestos por nueva legislación, exceptuando los términos para llevar a cabo el proceso

---

[11] En *Loper Bright Enterprises v. Raimondo, supra,* resuelto el 28 de junio de 2024, el Tribunal Supremo federal revocó la doctrina de deferencia establecida en el caso *Chevron USA, Inc. v. Natural Resources Defense Council,* 467 US 837 (1984). Con ello, además, se propende al fortalecimiento de la separación de poderes. Véase, *Loper Bright Enterprises v. Raimondo, supra,* pág. 2274 (Op. Conc. Juez Thomas).

[12] Opinión de 21 de mayo de 2025 (Hon. Kolthoff Caraballo).

adjudicativo cuando alguna Ley establece términos distintos, los cuales el Departamento debe adoptar.

**Regla 4** *Definiciones*

.　　.　　.　　.　　.　　.　　.　　.

(f) *Consumidor* - Toda persona natural, que **adquiere o utiliza productos o servicios como destinatario final**. Incluye toda otra persona, asociación o entidad que por designación de ley está facultado para presentar su reclamación en el Departamento.

.　　.　　.　　.　　.　　.　　.　　.

Como se sabe, la *jurisdicción* es el poder o autoridad que ostentan los organismos adjudicativos para considerar y decidir los casos y las controversias ante su atención. *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020), que cita a *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019). Un dictamen emitido sin jurisdicción es nulo en Derecho y, por lo tanto, inexistente. En consecuencia, una vez un el ente adjudicativo determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la inmediata desestimación del recurso presentado de conformidad con lo ordenado por las leyes orgánicas y sus reglamentos. *S.L.G Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882-883 (2007); *Torres Alvarado v. Madera Atiles*, *supra*, págs. 499-500; además, *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014); *Suffront v. A.A.A.*, 164 DPR 663, 674 (2005).

**C.**

Por su parte, la Ley Núm. 10 de 26 de abril de 1994, según enmendada, *Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión de Corredor, Vendedor o Empresa de Bienes Raíces en Puerto Rico*, 20 LPRA sec. 3025 *et seq.*, persigue un fin reglamentario, dirigido al beneficio de los **consumidores** de estos servicios profesionales. Asimismo, la Ley Núm. 10-1994 confiere al DACO la facultad para "[c]onsiderar y adjudicar las querellas radicadas por los consumidores al amparo de esta Ley". Art. 23 (d) Ley Núm. 10-1994, 20 LPRA sec. 3046 (d).

La Ley Núm. 10-19994, en el inciso (g) del Artículo 2, define, en lo pertinente, el *corredor de bienes raíces* como "la persona natural que,

poseyendo una **licencia** para ejercer la profesión de Corredor de Bienes Raíces expedida por la Junta, actúe como **intermediario**, mediante **pago o promesa de pago** de cualquier compensación mutua y previamente convenida, entre las partes que acuerden llevar a cabo en el Estado Libre Asociado de Puerto Rico una transacción de **compraventa**, promesa de venta, **opción de compra o venta**", entre otras enajenaciones de bienes inmuebles. (Énfasis nuestro). 20 LPRA sec. 3025 (g). La disposición aclara, no obstante, que "**no se considerará como ejercer la profesión de Corredor de Bienes Raíces para propósitos de esta Ley, cualquier tipo de transacción relacionada con la compra, venta**, alquiler, permuta, subasta o administración **de un bien inmueble en la que él sea el titular de dicho bien inmueble y actúe en beneficio propio y no como intermediario entre dos (2) clientes**". (Énfasis nuestro). *Id.*

El estatuto, además, contempla como **excepción a su aplicabilidad** a aquellos "propietarios de bienes inmuebles localizados en o fuera de Puerto Rico que vendan o enajenen bienes inmuebles propios cuando no se dediquen habitualmente a la venta de bienes raíces". Art. 33 (e) Ley Núm. 10-1994, 20 LPRA sec. 3056 (e). Al respecto, la Junta de Corredores, Vendedores y Empresas de Bienes Raíces del Estado Libre Asociado de Puerto Rico "podrá establecer por reglamento las normas necesarias para evitar que esta excepción se utilice para el ejercicio sin licencia de las actividades que esta Ley regula". *Id.*

En cuanto a los acuerdos contractuales de corretaje,[13] la Ley Núm. 10-1994 describe el *contrato de corretaje* como "aquél mediante el cual **una persona, a cambio de una retribución, se obliga a prestarle servicios a otra como intermediario con un tercero para llevar a cabo una transacción de bienes raíces**...". (Énfasis nuestro). Art. 2 (e) Ley Núm. 10-1994, 20 LPRA sec. 3025 (e). De acuerdo con la práctica de los bienes

---

[13] Si bien el Código Civil de Puerto Rico establece una definición del contrato especial de corretaje, así como unas obligaciones para el corredor y el comitente, por su carácter general, el Artículo 1418, 31 LPRA sec. 10413, excluye de su aplicación a aquellos agentes cuya actividad está regida por una ley especial.

raíces, hay tres tipos de contratos de corretaje, a saber: los exclusivos, los semiexclusivos y los abiertos. *S.L.G. Rodríguez-Rivera v. Bahía Park*, 180 DPR 340, 356-357 (2010). En el *exclusivo*, se limita la competencia y participación de otros corredores o empresas de bienes raíces en la gestión de corretaje y el cliente o propietario priva su capacidad de perfeccionar por sí mismo la transacción de bienes raíces, ya que "concede al corredor o empresa de bienes raíces la autorización única y exclusiva para actuar como intermediario en representación de éste para ofrecer, promocionar y negociar determinada transacción de bienes raíces". En el contrato *semiexclusivo*, distinto al anterior, el dueño "no renuncia a su facultad de realizar gestiones para perfeccionar la transacción de bienes raíces por sí mismo". Por último, en los contratos de corretaje *abiertos*, el cliente "se reserva la facultad de contratar el número de corredores que desee. Por ende, el derecho de exigir el pago de la comisión será de aquel corredor que haya sido quien procuró que se perfeccionara la transacción de bienes raíces. *Id.*, pág. 357, que cita con aprobación a R. Cintrón Perales, *El contrato de corretaje de bienes raíces y opción de compraventa de propiedades residenciales*, San Juan, Ed. Situm, 2006, págs. 85-89.

**III.**

En la presente causa, el señor López Lora alega que el DACO tenía el deber de adjudicar si, conforme con el *Contrato* en controversia, la denegación del financiamiento fue o no imputable al recurrente, como optante y comprador. Afirma que el hecho que el recurrido sea o no corredor licenciado no exime a la agencia; e indica que ello constituyó un error de Derecho. Ello así, porque MLA se promociona públicamente a través de redes sociales y páginas web como una entidad dedicada a los bienes raíces. Por lo tanto, nos solicita la revocación del dictamen administrativo impugnado, que declaremos que él no fue responsable de la denegación del financiamiento y ordenemos el reembolso de la prima de opción, más otra suma invertida en mejoras consentidas.

En cambio, MLA nos intima a refrendar el dictamen administrativo. Arguye que no ejerció una actividad regulada por la Ley Núm. 10-1994, toda vez que no cobró una comisión ni ofreció servicios de corretaje. Sostiene que, al tratarse de un contrato privado entre particulares, rige el Código Civil, por lo que el DACO no tiene jurisdicción.

Independientemente de la condición o no de MLA como corredor de bienes raíces, un examen del *Contrato* suscrito entre el señor López Lora y el ente jurídico, por conducto del señor Medina Bonilla, refleja que el recurrido compareció al acuerdo como propietario del bien inmueble en cuestión, no en calidad de corredor de bienes raíces, de serlo.[14] Es decir, no media entre los contendientes un pacto de gestión de bienes raíces con un tercero, a cambio de un precio o una comisión, sobre lo cual sí regiría la jurisdicción del DACO. Ninguna de las modalidades del contrato de corretaje antes descritas se encuentran presentes.

En este caso, se pactó un derecho preferente de opción, en el que MLA, en calidad de titular o concedente, se obligó durante el plazo determinado de 60 días y a cambio de la prima pactada de $5,000.00 el perfeccionamiento del contrato de compraventa, cuyo precio previamente acordado fue de $192,000.00. Véanse, Arts. 1022-1032 del Cód. Civil, 31 LPRA secs. 8801-8824. En este contexto, la fuente de obligaciones y los desacuerdos surgidos entre las partes no constituyen materias a dirimir como parte de las competencias conferidas al DACO en su función adjudicadora. Ciertamente, de conformidad con la Ley Núm. 5-1973 y el Reglamento Núm. 8034, las cuestiones planteadas no se encuentran contempladas entre los asuntos para los cuales el DACO tiene autoridad para intervenir. Nótese que el organismo no tiene jurisdicción sobre aquellas controversias contractuales entre particulares, que no tengan una relación de comerciante o corredor de bienes raíces *versus* consumidor o

---

[14] Surge de la informacion pública registrada en el Sistema Karibe, de la cual tomamos conocimiento judicial, que la finca 20500 de Humacao (folio 3023, tomo 630) fue adquirida por MLA en 2023 mediante venta judicial. Véase, además, el caso HU2022CV00694.

cliente. Empero, tal como consignó la agencia impugnada en la *Resolución* recurrida, su decisión es "sin perjuicio de que la parte querellante acuda al foro correspondiente para vindicar los derechos que entienda le asisten". Al fin y al cabo, las causas de acciones personales que se ventilan en las salas de nuestros tribunales prescriben al transcurrir cuatro años, a menos que se interrumpan por la presentación de una demanda judicial o una reclamación administrativa o arbitral, una reclamación extrajudicial o por el reconocimiento del deudor. Arts. 1197 y 1203 del Cód. Civil, 31 LPRA secs. 9489 y 9495.

Por consiguiente, luego de una evaluación minuciosa de la totalidad del expediente administrativo, concluimos que el DACO aplicó bien el Derecho y actuó dentro de los límites de su ley habilitadora. De haber seguido un proceder distinto, hubiera actuado *ultra vires*. Consecuentemente, esta curia también adolece de jurisdicción para atender las contenciones del señor López Lora, toda vez que éste tramitó en primera instancia su reclamo por una vía administrativa, sin que la agencia tuviera jurisdicción sobre la controversia. En vista de ello, procedemos a refrendar la desestimación de la *Querella* por falta de jurisdicción sobre la materia.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, confirmamos la desestimación por falta de jurisdicción decretada en la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones